# Exhibit A

E-FILED
3/11/2022 3:17 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV395280
Reviewed By: R. Walker

Rosemary M. Rivas (State Bar No. 209147)
Email: rmr@classlawgroup.com
Geoffrey A. Munroe (State Bar No. 228590)
Email: gam@classlawgroup.com
David K. Stein (State Bar No. 257465)
Email: ds@classlawgroup.com
Rosanne L. Mah (State Bar No. 242628)
rlm@classlawgroup.com
Kyla Gibboney (State Bar No. 301441)
kjg@classlawgroup.com
**GIBBS LAW GROUP LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701

*Counsel for Plaintiffs and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## SUPERIOR COURT OF CALIFORNIA
## FOR THE COUNTY OF SANTA CLARA

JESSE GRANATO, STEPHANIE LANDRUM, SELESTIA ORDWAY, and JANICE ZARAD, on behalf of themselves and all others similarly situated,

                          Plaintiffs,

v.

APPLE INC.,

                          Defendant.

Case No.   22CV395280

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS OF THE MAGNUSSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301, ET SEQ.; THE UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.; THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, ET SEQ.; AND FOR UNJUST ENRICHMENT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

INTRODUCTION ................................................................................................................... 1

JURISDICTION AND VENUE ............................................................................................. 2

CHOICE OF LAW ................................................................................................................. 2

PARTIES ................................................................................................................................. 2

FACTUAL ALLEGATIONS ................................................................................................. 3

    A.    Apple imposes aggressive repair restrictions on its customers. ................................ 3

        1.    Apple threatens customers with loss of warranty coverage. ......................... 4

        2.    Apple withholds parts, tools, and repair manuals ........................................... 7

        3.    Apple places "booby traps" and other repair impediments in its devices. ......................................................................................................... 9

        4.    Apple refuses service to customers who exercise their right to repair. ........ 10

        5.    Apple disparages independent repair shops and aftermarket parts. ............. 11

    B.    Apple's repair restrictions allow it to charge higher prices for repairs which in turn force consumers to buy new devices ..................................................... 12

    C.    Apple's repair restrictions harm the public in other ways as well. ......................... 14

        1.    Apple's restrictions deprive customers of timely, local repairs ................ 14

        2.    Apple's restrictions harm the environment. .................................................. 15

        3.    Apple's Restrictions Harm Small Businesses and Lower-Income Communities ................................................................................................... 15

    D.    Apple's repair restrictions have been condemned by the FTC, its cofounder, and its own shareholders. ......................................................................... 16

CLASS ACTION ALLEGATIONS ..................................................................................... 17

    A.    The Parties Are Numerous and Ascertainable ......................................................... 18

    B.    There Is a Well-Defined Community of Interest ...................................................... 18

        1.    Common Questions of Law and Facts Predominate .................................... 18

        2.    Plaintiffs' Claims Are Typical of the Class .................................................. 19

        3.    The Class Representative Can Adequately Represent the Class ................. 19

C.   A Class Action Is Superior to All Other Available Methods for the Fair and Efficient Adjudication of Plaintiff's and Class Members' Claims ................... 19

FIRST CAUSE OF ACTION ........................................................................................ 20

SECOND CAUSE OF ACTION ................................................................................... 21

THIRD CAUSE OF ACTION ....................................................................................... 22

FOURTH CAUSE OF ACTION .................................................................................... 23

PRAYER FOR RELIEF ............................................................................................... 24

CLASS ACTION COMPLAINT

**INTRODUCTION**

1.     For years, Apple has engaged in a concerted effort to prevent its customers from repairing their own devices or paying local businesses for repairs.

2.     In a fair marketplace, an Apple customer with a product such as an iPhone with a cracked screen, aging battery, or broken camera lens could lengthen the device's lifespan by repairing it themselves, enlisting a technically adept friend, or paying an independent electronics shop for a quick and inexpensive repair.

3.     Apple would rather its customers replace their devices as frequently as possible, however, and so has made independent repairs difficult or impossible. Techniques Apple enlists to frustrate repair efforts include threating customers with loss of warranty coverage; withholding parts, tools, and repair manuals; placing "booby traps" and other physical impediments in its devices; refusing to service devices that were previously repaired; and disparaging independent repair shops and aftermarket parts.

4.     By deliberately frustrating its customers' efforts to fix their own devices, Apple has been able to corner the repair market and charge consumers exorbitant prices when their Apple devices require service. Apple's prices are purposefully set so high that it is often in consumers' best interests to simply buy a brand-new device, leading to more sales and more revenue for Apple that it could otherwise generate.

5.     Apple's repair restrictions also harm the environment, hurt small business and lower-income communities, and deprive many consumers of access to timely, local repairs. For these reasons, Apple's anti-repair practices have been criticized by the FTC, Apple co-founder Steve Wozniak, and Apple's own shareholders.

6.     Plaintiffs now bring this proposed class action to stop Apple from continuing to impede its customers' ability to fix their own devices or hire repair shops of their choosing and to recover for consumers the illegal monies Apple has reaped through those its efforts.

7.     Apple's anti-repair practices may be permanently enjoined, and restitution ordered under California's Unfair Competition Law, which prohibits companies from distorting the marketplace by utilizing underhanded business practices that harm consumers. Apple's practice of

CLASS ACTION COMPLAINT

conditioning future warranty coverage on the exclusive use of Apple-authorized repair facilities may also be enjoined and damages awarded under the Magnuson-Moss Warranty Act, which prohibits those type of tying arrangements, as well as under the California Consumers Legal Remedies Act, which prohibits the inclusion of unconscionable provisions in consumer contracts.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction and venue pursuant to Cal. Civ. Code §§ 395.5 and §§ 410.10 over the claims raised in this Complaint for the following reasons: (i) Defendant maintains its headquarters in Santa Clara County; (ii) Defendant regularly operates, advertises, markets, warrants, sells, and repairs consumer products throughout the State of California; and (iii) a substantial portion of the underlying transactions and events complained of herein occurred, and affected persons and entities reside, in Santa Clara County.

## CHOICE OF LAW

9.     The application of California law to the state law claims alleged herein is appropriate and constitutional because Apple maintains its headquarters in this State and the alleged misconduct emanated from this State.

10.     Moreover, according to the terms and conditions governing the service of Apple's products, the laws of the State of California apply.

## PARTIES

11.     Plaintiff Jesse Granato is a citizen and resident of Illinois. On August 14, 2020, Plaintiff Granato bought a new Apple iPhone SE (2nd generation).  Plaintiff Granato's Apple iPhone SE came with Apple's One (1) Year Limited Warranty.

12.      In April 2021, Plaintiff Granato visited the Apple Lincoln Park store in Chicago, Illinois because the screen on his iPhone SE went black. The problem was not covered by the One-Year Limited Warranty. On April 2, 2021, Plaintiff Granato paid Apple $129.00 plus tax for a screen repair on the iPhone SE.

13.     Plaintiff Stephanie Landrum is a citizen and resident of New Jersey. On May 17, 2020, Plaintiff bought a new Apple iPhone 11. Plaintiff Landrum's Apple iPhone 11 came with Apple's One (1) Year Limited Warranty.

2

14.     In February 2021, Plaintiff visited the Apple store in Marlton, New Jersey because the screen on her iPhone 11 was broken. The problem was not covered by the One-Year Limited Warranty. On February 3, 2021, Plaintiff Landrum paid Apple $199.00 plus tax for a screen repair on the iPhone 11.

15.     Plaintiff Selestia Ordway is a citizen and resident of Virginia. In January 2021, Plaintiff Ordway bought a new Apple iPhone 12 Pro Max from Spectrum in Plattsburgh, New York. Ordway's Apple iPhone 12 Pro Max came with Apple's One (1) Year Limited Warranty.

16.     In October 2021, Plaintiff Ordway contacted Apple because the camera on her iPhone 12 Pro Max cracked. The problem was not covered by the One-Year Limited Warranty. The price Apple quoted Plaintiff Ordway for the repair—over $300—was more than Ordway could afford, so she has not repaired her iPhone 12 Pro Max.

17.     Plaintiff Janice Zarad is a citizen and resident of Florida. On November 19, 2019, Plaintiff Zarad bought a new Apple iPhone 11 for her daughter. Zarad's Apple iPhone 11 came with Apple's One (1) Year Limited Warranty.

18.     On January 14, 2021, Plaintiff Zarad's daughter visited the Apple Aventura store in Aventura, Florida, because the iPhone 11's screen cracked. On January 14, 2021, Plaintiff Zarad paid Apple $199 plus tax for a screen repair on the iPhone 11.

19.     Defendant Apple Inc. is a corporation incorporated under the laws of the State of California. It maintains its principal place of business in Cupertino, California.

## FACTUAL ALLEGATIONS

**A.     Apple imposes aggressive repair restrictions on its customers.**

20.     Apple is the most valuable company in the world, with a market capitalization of $3 trillion dollars and approximately 1.65 billion Apple products in use worldwide.

21.     To stay on top, Apple needs customers to regularly upgrade their Apple devices with the latest generation of Apple's products, which includes the Apple iPhone (iPhone 13 Pro, iPhone 13, iPhone 12, iPhone SE, iPhone 11), Apple iPad (iPad, iPad Pro, iPad Air, and iPad mini), Apple iPod, Apple Watch (Watch Series 7, Watch SE, Watch Series 3, Watch Nike, Watch

3

Hermès, Watch Studio), Apple Mac (MacBook Air, MacBook Pro, iMac, Mac Pro, Mac Studio, and Mac mini), Apple AirPods (AirPods 3rd generation, AirPods 2nd generation, AirPods Pro, and AirPods Max) and Apple TV (4K and HD) (hereinafter, "Apple Products")[1].

22.     Under normal circumstances, Apple customers with devices such as an iPhone that have cracked screens or other minor issues could readily prolong the lives of their electronic devices by repairing them. Copyright and patent law both recognize end-users' right to repair their own devices; there are a variety of online resources that publish guides to help consumer repair electronic devices; and there are a large number of independent small businesses willing to repair electronic devices at an affordable price.

23.     But in an effort to accelerate the pace at which its customers need to replace their Apple devices, Apple deliberately frustrates its customers' efforts to repair their own devices or at a repair shop of their choosing by imposing restrictions on the repair of its products.

24.     Techniques Apple has used to prevent customers from repairing their own devices are detailed below and include: (i) threatening customers with loss of warranty coverage; (ii) withholding parts, tools, and repair manuals; (iii) placing "booby traps" and other repair impediments in its devices; (iv) refusing to service devices that have been previously repaired; and (v) disparaging independent repair shops and aftermarket replacement parts.

**1.     Apple threatens customers with loss of warranty coverage.**

25.     With the purchase of every new Apple branded product, Apple typically provides an "Apple One (1) Year Limited Warranty" (hereinafter, "Apple Limited Warranty") that covers against defects in materials and workmanship for a period of one year from the date of original retail purchase.  The written terms of the Apple Limited Warranty for its products, including the iPhone, iPad, iPod, TV, and Watch, have been substantially similar since September 2012.

26.     The Apple Limited Warranty contains a number of exclusions, including:

---

[1] The term "Apple Products" also refers to all prior models of the iPhone, iPad, iPod, Watch, Mac, AirPods, and TV sold within the last four years preceding the filing of this complaint even if not mentioned herein.

CLASS ACTION COMPLAINT

- consumable parts, such as batteries or protective coatings that are designed to diminish over time, unless failure has occurred due to a defect in materials or workmanship;

- cosmetic damage, including but not limited to, scratches, dents, and broken plastic on ports unless failure has occurred due to a defect in materials or workmanship;

- damage caused by accident, abuse, misuse, fire, liquid contact, earthquake or other external cause; and

- defects caused by normal wear and tear or otherwise due to the normal aging of the Apple Product.

27.     Were it not for Apple's unfair practices, many customers whose Apple devices required a repair not covered by Apple's Limited Warranty would perform those repairs themselves or pay an independent electronics shop to repair their products.

28.     But Apple's Limited Warranty requires that customers obtain *all repairs*—even those not covered by the warranty—from Apple or an Apple Authorized Service Providers, such as Best Buy.

29.     Consumers are not allowed to repair their own devices or pay an independent repair shop to do so under the terms of their warranty, and if they do, Apple terminates their warranty coverage.

30.     Apple's warranty specifically instructs consumers in bold type not to open their Apple devices to conduct repairs and only to allow Apple or Apple Authorized Service Providers (AASP) to repair their devices:

> **Important: Do not open the Apple Product. Opening the Apple Product may cause damage that is not covered by this Warranty. Only Apple or an AASP should perform service on this Apple Product.**

31.     Apple's user manuals also instruct customers not to independently repair their devices, and Apple makes compliance with those instructions a condition of warranty coverage. Its warranty states that Apple will only cover defects in materials and workmanship if the consumer's device is used "in accordance with Apple's published guidelines …. [which] include … [Apple's] user manuals."

32.     The relevant language from Apple's user manuals is reprinted below:

a.     **iPhone**: Apple's user manual states in part: "**Repairing** If iPhone is damaged or malfunctions, contact Apple or an Apple Authorized Service Provider. Repairs by service providers other than Apple or an Apple Authorized Service Provider may not involve the use of Apple genuine parts and may affect the safety and functionality of the device."

b.     **iPad**: Apple's user manual states in part: "**Repairing** Don't open iPad and don't attempt to repair iPad yourself. Disassembling iPad may damage it or may cause injury to you. If iPad is damaged, malfunctions, or comes in contact with liquid, contact Apple or an Apple Authorized Service Provider. Repairs by service providers other than Apple or an Apple Authorized Service Provider may not involve the use of Apple genuine parts and may affect the safety and functionality of the device." The Apple Limited Warranty also says: "**Battery** Don't attempt to replace the iPad battery yourself. The lithium-ion battery in iPad should be serviced or recycled by Apple or an authorized service provider."

c.     **iPod**: Apple's User Guide user manual states in part: "**Repairing** Don't open iPod touch and don't attempt to repair iPod touch yourself. Disassembling iPod touch may damage it or may cause injury to you. If iPod touch is damaged, malfunctions, or comes in contact with liquid, contact Apple or an Apple Authorized Service Provider. Repairs by service providers other than Apple or an Apple Authorized Service Provider may not involve the use of Apple genuine parts and may affect the safety and functionality of the device." The Apple Limited Warranty also says: "**Battery** Don't attempt to replace the iPod touch battery yourself. The lithium-ion battery in iPod touch should be replaced by Apple or an authorized service provider."

d.     **Apple TV**: Apple's user manual states in part: "Do not make repairs yourself. You can find more information about getting service at support.apple.com/apple-tv/repair/service." Apple's TV Service and Repair webpage instructs consumers to contact Apple or an AASP for service and repairs.

e.     **Apple Watch**: Apple's user manual states in part: "**Repairing** Don't open Apple Watch and don't attempt to repair Apple Watch yourself. Disassembling Apple Watch may damage it, result in loss of water resistance, and may cause injury to you. If Apple Watch is damaged or malfunctions, contact Apple or an Apple Authorized Service Provider. You can find more about getting service at support.apple.com/watch/repair/service.

CLASS ACTION COMPLAINT

f. **MacBook**: Apple's user manual states in part: "**Built-in battery**. Don't attempt to replace or remove the battery yourself—you may damage the battery, which could cause overheating and injury. The built-in battery should be replaced by Apple or an authorized service provider and must be recycled or disposed of separately from household waste. Dispose of batteries according to your local environmental laws and guidelines. Don't expose your MacBook Pro to extreme heat sources, such as radiators or fireplaces, where temperatures might exceed 212°F (100°C)."

g. **Mac**: Apple's user manual states in part: "**Repairing**. Your iMac doesn't have any user-serviceable parts, except for the memory, which is user-replaceable in 27-inch models and service center-replaceable in 21.5-inch models. Disassembling your iMac may damage it or may cause injury to you. If you attempt to open your iMac or install items other than memory in 27-inch models, you risk damaging your computer, and such damage isn't covered by the limited warranty on your iMac. If your iMac needs service, is damaged, malfunctions, or comes in contact with liquid, contact Apple or an Apple Authorized Service Provider. You can find information about getting service at support.apple.com/mac/repair/service."

33. Apple's retail store employees are required to inform consumers not to obtain service or repairs for non-covered warranty items from anyone other than Apple or an Apple Authorized Service Provider.  Moreover, Apple's retail store employees inform consumers that if they obtain service or repairs for non-covered warranty items from anyone else, Apple will no longer provide any type of service or repairs for the Apple branded products, whether covered by the warranty or not.

**2.    Apple withholds parts, tools, and repair manuals.**

34. To further deter customers from exercising their right to repair their own devices, Apple also has historically refused to sell parts to independent repair shops.

35. For example, in one reported incident, a customer spilled water on her 2018 MacBook Air. The customer took her computer into West Seattle Computers whose technicians determined the broken part was a power port—an easy fix. The problem was that the company could not get a replacement part. Owner Eric Tishkoff said, "We can't get parts directly from Apple . . . We just had to hand back the machine and say I'm really sorry."  According to Mr. Tishkoff, he could have made the repair for about $200, while he believes Apple would charge

7

1   about $800 to $1200. The customer ended up buying a brand-new computer from Apple.

2       36.     Apple has made certain repairs impossible without access to hardware or software

3   tools that are only available to Apple Stores and authorized repair shops. For example, without a

4   proprietary software tool, independent repairs shops found it impossible to perform iPhone 12

5   camera repairs or to repair 2018 MacBook Pros and iMac Pros.

6       37.     Apple has failed to adequately explain its refusal to not make parts or manuals

7   available to independent repair shops.  According to Apple, its goal is "safe and reliable repairs,"

8   and for that to occur, its necessary that repair technicians follow "proper safety and repair

9   procedures," and use "genuine Apple parts and tools."  But Apple could achieve that goal by

10  providing independent repair shops and other repairers with genuine Apple parts, tools, and repair

11  manuals.

12      38.     In response to public pressure, Apple claimed in August 2019 that it would begin

13  providing genuine parts, tools, and repair guides to independent repair shops through its

14  Independent Repair Program.

15      39.     Independent repair shops, however, have been found that promise illusory—as it is

16  expensive and requires them to agree to onerous terms. The prices Apple charges independent

17  repair shops for parts and equipment is excessive and often more than what independent shops

18  typically charge for repairs. And the pre-conditions Apple places on its Independent Repair

19  Program are designed to dissuade participation and render independent repair shops uncompetitive.

20  As the U.S. Public Interest Research Group put it, Apple's contractual conditions make it "like

21  going to a normal repair shop except one that advertises against [itself] at every possible moment."

22      40.     Among the contractual terms Apple requires would-be participants in its

23  Independent Repair Program to agree to before they can obtain genuine parts, tools, and repair

24  guides are:

25      •  Provisions allowing Apple to make **unannounced inspections and audits** at any
26         time, including for up to five years *after* an independent repair shop has left the
           Independent Repair Program;
27
        •  Provisions requiring independent repair shops to **share their customer information**
28         (including names, addresses, and phone numbers) at Apple's request;

8

CLASS ACTION COMPLAINT

- Provisions requiring independent repair shops to prominently **post visible written notice** on their storefront and website informing customers that they are not authorized to perform repairs by Apple;

- Provisions requiring independent repair shops to **obtain "express written acknowledgment" from customers** showing their understanding that they are not receiving repairs from an Apple authorized service provider;

- Provisions requiring independent repair shops to obtain express written acknowledgment from customers showing their understanding that Apple will **not warrant the repairs**, although independent repair shops will be required to have an Apple certified technician on site;

- Provisions that prevent independent repair shops from offering an Apple warranty on the genuine Apple parts like Apple and AASPs do;

- Provisions that are vague, ambiguous, broad, and subjective that prohibit independent repair shops from using "prohibited parts," which are partly defined as "counterfeit products or service parts" and "products and service parts that infringe on Apple's intellectual property"; and

- Provisions that impose **penalties for independent repair shops who fail Apple's audits**.

41.  As an attorney with the Electronic Frontier Foundation stated, these contract provisions "give Apple a huge amount of discretion, impose potentially business-destroying costs and penalties on the repair shop, and require that they grant access to Apple without notice." If an independent repair shop signs Apple's agreement, they "repair non-Apple devices at [their] peril."

**3.    Apple places "booby traps" and other repair impediments in its devices.**

42.  Apple also deliberately makes it difficult for independent repair shops to repair its products through "booby traps" and other physical impediments. For example, Apple's laptops are manufactured with proprietary screws requiring specialized tools to remove the. And Apple's AirPods are small and packed with components, making it difficult to replace the battery.

43.  A software update that Apple issued in 2016 bricked iPhone devices if the software detected that non-Apple parts was installed. Apple initially characterized the bricked devices as "the result of security checks designed to protect our customers," but after a public uproar ensued, Apple was forced to publicly apologize and issue a fix.

9

44.     And in 2019, it was widely reported that if an iPhone's battery was replaced by an independent repairer the iPhone would display the message "Service," sowing confusion and making consumers believe there is a problem when there is not. The "Service" message appeared even if the independent repairer used a genuine Apple battery.

45.     Recently with the introduction of the iPhone 13, it was reported that if a customer had their iPhone 13 display replaced by an unauthorized repairer, whether a genuine display was used or not, the phone's Face ID feature[2] was disabled unless a tiny control chip from the original display was moved over to the new one. The process to move over the control chip is complex, requiring time, special equipment, and the ability to microsolder. Apple and Apple Authorized Service Providers, however, have access to a software tool that allows an iPhone 13 to accept a new screen without disabling the Face ID feature.

46.     In or around November 9, 2021, after public reporting, Apple informed *The Verge* that sometime in the future it would issue a software update to so that the transfer of the microcontroller is unnecessary to ensure the use of Face ID after a display replacement.

**4.     Apple refuses service to customers who exercise their right to repair.**

47.     In addition to terminating its warranty coverage, Apple refuses to provide *any* service to customers who obtain independent repairs. Apple instructs Apple Authorized Service Providers to refuse service as well. For example, according to one technician at an AASP:

> I'm an Apple service technician at a local authorized provider … and especially when it comes to Apple stuff, it's been a real hassle for a lot of people where there's not an official Apple store within almost 150 miles of us.  We get a lot of people who brought their stuff in [saying] 'I had to have my screen fixed at another store, I had my battery swapped out at so-and-so other retailer,' and suddenly I have to tell these people, '**Unfortunately, I can't work on your device anymore because Apple won't let me**.'  It's incredibly frustrating, because a lot of the times it's just like, 'Oh, you know, I took it down to my friend who works on this stuff all the time, and all he did was open it.' Unfortunately, from there, even then, Apple is just like, 'Oh, hey, if it's a 6S or newer, they opened it and they can't put the adhesive back on, we can't say definitively they didn't do anything else.' So its going to be

---

[2] The Face ID feature allows users to unlock their iPhone and iPad devices, signs into apps through autofill of usernames and passwords, and authenticate purchases "with a glance."

a whole new phone replacement.

48.     For example, in October 2021, an Apple customer sued the company in small claims court, alleging that Apple refused to service an iPhone although it was still under warranty.[3] According to Apple, the iPhone had been tampered with, although it provided no additional explanation for its refusal to repair the iPhone.  The customer then offered to pay for the repair to his iPhone, but Apple still refused to service it.

49.     And in Australia in 2018, Apple was fined 9 million Australian dollars for refusing to offer free repairs of iPhones and iPads that were previously serviced by independent repairers.

**5.     Apple disparages independent repair shops and aftermarket parts.**

50.     Apple further deters customers from repairing their own devices by disparaging independent repair shops and non-Apple parts. In its product user manuals, Apple warns customers: "Repairs by service providers other than Apple or an Apple Authorized Service Provider may not involve the use of Apple genuine parts and may affect the safety and functionality of the device."

51.     Apple claims it is unsafe for anyone other than Apple or an Apple Authorized Service Provider to replace a product's battery. For example, Apple warns iPhone consumers: "Don't attempt to replace the iPhone battery yourself.  The lithium-ion battery in iPhone should be replaced by Apple or an authorized service provider. Improper replacement or repair could damage the battery, cause overheating, or result in injury."

52.     The FTC has examined contentions like Apple's that repair restrictions are necessary to foster safety and prevent injury but found no evidence that authorized repair providers are more careful or that independent repair shops fail to take safety precautions. Neither Apple nor any other electronics manufacturer was able to provide the FTC with any facts tying physical injuries to repairs performed by independent repair shops.

53.     Apple also falsely suggests to its customers that independent repair shops will not properly dispose of iPhone batteries. For example, Apple says: "Putting batteries directly in the

---

[3] *See* https://www.businessinsider.com/apple-sued-refusing-fix-iphone-under-warranty-san-francisco-smartphone-2021-10?utm_source=feedly&utm_medium=webfeeds (last visited November 16, 2021).

CLASS ACTION COMPLAINT

trash is dangerous for the environment. Apple and all our authorized service providers are committed to recycling and disposing of batteries with the utmost respect for the earth. So recycle your device with us."

54.    Apple also encourages Apple Authorized Service Providers to disparage independent repair shops. For example, Mobile Kangaroo, which claims it is an Apple Authorized Service Providers, says the following about independent repair shops on its website: "If you take your iPhone to an unauthorized repair facility, you have no guarantee that they are using certified, authentic Apple replacement parts. Only AASP's can promise that. It doesn't make sense to risk the overall health of your iPhone, with no attached warranties, by going to a random repair facility. Apple facilities use only Apple parts – and Apple stands behind every part they create."[4]

55.    In October 2021, *Vice* reported that leaked Apple training videos for Apple Authorized Service Provides show that Apple trains repair technicians to "undermine third party companies and talk customers into buying more expensive first party repairs."[5]

56.    For example, in one of the videos which involves role playing, a man taking on the role of a consumer asks, "I cracked the glass on my phone and I'm comparing costs.  How much for just that part?"  The repair technician role, played by another man, says, "I can show you the cost just for the part before we begin."  The customer then says, "Whoa . . . That's way more than the shop down the street.  Why is it so expensive here[?]" The repair technician then says, "This quote's [sic] for a genuine Apple part," and subsequently explains that "A genuine Apple part has to pass AppleCare engineering criteria . . . With a genuine Apple display, all the features you've come to rely on behave seamlessly . . . that's not the case with third party displays."

**B.    Apple's repair restrictions allow it to charge higher prices for repairs which in turn force consumers to buy new devices**

57.    As a result of Apple's practice of frustrating its customers' efforts to repair their

---

[4] *See* https://mobilekangaroo.com/is-apple-authorized-repair-worth-it (last visited November 16, 2021).

[5] *See* https://www.vice.com/en/article/5dbv83/leaked-apple-training-videos-show-how-it-undermines-third-party-repair (last visited November 16, 2021).

1  own devices, customers pay Apple higher prices for repairs, buy more brand-new Apple products

2  in lieu of paying Apple for expensive repairs, forego repairs, and purchase more AppleCare+

3  extended warranties to avoid paying Apple's high prices in the event their device ever needs to be

4  repaired.

5  58.     Apple's prices for product repairs are expensive and can cost up to a third of the

6  price of a new product or more. For example, with regard to the iPhone Pro Max X, 11, 12, and 13,

7  Apple charges $329 for a screen repair that is not covered by Apple's Limited Warranty or Apple

8  Care+, and $599 for other damage. The cost of replacing a screen on the iPhone Pro X, 11, 12, and

9  13 and iPhone X, 11, 12 and 13 is $279 and between $399 and $549 for other damage.[6]

10  59.     In contrast, independent repair shops can often replace an iPhone screen for under

11  $100. Contrary to what Apple and Apple Authorized Service Providers tell consumers, that does

12  not mean the parts independent repair shops use are inferior. Many independent repair shops use

13  only high-quality aftermarket parts (parts that are not made by Apple), use authentic parts, or

14  refurbished parts.

15  60.     By charging an inflated price for repairs, Apple not only makes more money on

16  each repair, but it also causes many customers to forego a repair and simply buy a new Apple

17  device. Apple customers are motivated to simply buy a new product to replace their broken one.

18  One independent repair shop owner reported that customers visit his shop "all the time" saying that

19  Apple told them it could not repair their phones and suggested they buy a new one.

20  61.     Apple's inflated repair prices also lead more customers to purchase more

21  AppleCare+ extended warranties from Apple. Customers know that Apple charges supra-

22  competitive prices for repairs and that if their device is accidentally damaged outside of the

23  standard warranty term, they will be faced with a difficult decision to either pay Apple's inflated

24  repair price or purchase a new device from Apple. By purchasing an AppleCare+ extended

25  warranty and paying more to Apple up-front, customers can avoid facing this difficult decision and

26  ensure that Apple will repair their device for a reasonable price in the event it is damaged or

27  _____

28  [6] *See* Appendix A for current repair price list and Appendix B for current product price list.

otherwise requires replacement parts. Customers would not need to purchase this protection from Apple if repairs services were widely available at fair and competitive prices.

62.     This is not the first time Apple has used unfair business practices to drive sales. In 2017, customers filed several lawsuits alleging that Apple released a software update designed to slow down (or throttle) the performance of older iPhone models to induce consumers to buy new phones. Developers at Geekbench had published benchmark evidence showing performance degradation to iPhones when the automatic update was downloaded. Customers had long complained that Apple intentionally degraded the performance of older iPhone models through its software upgrades, and those suspicions were confirmed by Geekbench's data.

63.     Apple subsequently admitted that its software updates contained controls to cause older iPhones to operate more slowly. In response to the ensuing public outcry, Apple began offering customers steeply discounted battery replacements. It also agreed to pay up to $500 million to consumers as part of a class action settlement.

64.     In a letter to investors, Apple CEO Tim Cook reported that the company expected a loss in revenue due to decreased iPhone sales. According to Cook, the decreased sales were due in part to the many consumers who took advantage of Apple's reduced pricing for battery replacements—confirming that Apple is well aware that higher repair prices induce its customers to buy new Apple devices rather than repair their existing devices.

**C.     Apple's repair restrictions harm the public in other ways as well.**

      **1.     Apple's restrictions deprive customers of timely, local repairs**

65.     Another harm to consumers resulting from Apple's repair restrictions is the lack of access to local and timely repairs and access to repairs that manufacturers and their network of authorized service providers will not offer.

66.     For example, when the camera broke on Vermont State Senator Christopher Pearson's iPhone, Apple told him "nobody in Vermont could fix it. They wanted me to send it to them."  But mailing it away was impractical for Senator Pearson because he also runs a consulting business using his phone. According to Senator Pearson, mailing his phone away would have the

1  effect of shutting down his business for a week.

2       67.     Untimely restrictions and the lack of local access to repairs also have a negative

3  effect on families, especially when many parents are working from home and rely on their products

4  to do their work, or when children have to use their products, such as tablets or notebooks, to do

5  their schoolwork at home.

6          **2.**     **Apple's restrictions harm the environment.**

7       68.     Apple's restrictions also result in environmental harm by increasing the rate at

8  which its customers discard their Apple devices and accelerating the production of e-waste.

9       69.     The EPA defines "e-waste" to include discarded, donated, and recycled electronics,

10  such as smartphones and notebooks, which end up on a landfill or unprotected dump sites in the

11  United States or abroad. In 2009, the agency calculated that approximately 129 million cell phones

12  were discarded each year compared to fewer than 12 million that were recycled. And in a 2014

13  study, it found that Americans dispose of approximately 416,000 cell phones every day.

14       70.     According to the FTC, "extending the life of consumer products unquestionably

15  delays these products' entry into the waste stream and reduces the amount of energy used to

16  generate replacement parts."  Preserving independent repair options for smartphone owners is

17  therefore "harmonious with the responsibilities identified by the EPA (longer-living devices, giving

18  consumers more ability to maintain those devices, and allowing for educated consumer purchases)"

19  and "is likely to further decrease the production of e-waste."

20       71.     A study by the European Environmental Bureau concluded that if all smartphones in

21  the European Union had a one-year life extension, that would eliminate the release of 2.1 million

22  metric tons of carbon dioxide per year by 2030, "which is the equivalent of taking more than a

23  million cars off the roads for a year."

24          **3.**     **Apple's Restrictions Harm Small Businesses and Lower-Income**
25                **Communities**

26       72.     Apple's repair restrictions also cause harm to small businesses and individuals they

27  employ by limiting their ability to compete with Apple for consumers' repair business. This can

28  result in independent or local repair shops hiring and employing fewer employees.

73.     As one participant in an FTC workshop on independent electronic repairs stated, the presence of independent repair businesses "keeps everybody competitive, keeps everybody honest. It makes people better at what they do. It makes people better repairers."  Another workshop participant stated, "right to repair allows for competition. It doesn't guarantee anyone will win. It doesn't guarantee that a lousy repair shop will stay in business, and it doesn't mean that a lousy dealership will stay in business.  It just means opportunity."

74.     According to the FTC, repair restrictions like those imposed by Apple have a particularly deleterious impact on communities of color and lower-income communities:

> [T]he burden of repair restrictions may fall more heavily on communities of color and lower income communities. Many Black-owned small businesses are in the repair and maintenance industries, and difficulties facing small businesses can disproportionately affect small businesses owned by people of color. . . . Repair restrictions for some products—such as smartphones—also may place a greater financial burden on communities of color and lower-income Americans. According to Pew Research, Black and Hispanic Americans are about twice as likely as white Americans to have smartphones, but no broadband access at home. Similarly, lower-income Americans are more likely to be smartphone-dependent. This smartphone dependency makes repair restrictions on smartphones more likely to affect these communities adversely.

75.     The hardships imposed on low-income families and small businesses in underserved communities were exacerbated during the pandemic "as consumers relied more heavily on technology than ever before."

**D.     Apple's repair restrictions have been condemned by the FTC, its cofounder, and its own shareholders.**

76.     The FTC has scrutinized manufacturer and seller repair restrictions for over forty-years, starting with the enactment of the Magnuson-Moss Warranty Act's anti-tying provision, which prohibits a manufacturer or seller from voiding a warranty if a consumer obtains non-covered repairs from a repairer outside of the manufacturer or seller's authorized repair network. *See* 15 U.S.C. § 2302(c).

77.     In 2019, the FTC issued a 56-page report to Congress regarding "anticompetitive practices related to repair markets." The report focuses special attention on a number of Apple's repair restrictions and concludes that "[r]estricting consumers and businesses from choosing how they repair products can substantially increase the total cost of repairs, generate harmful electronic

16

waste, and unnecessarily increase wait times for repairs." The report proposes several potential solutions, including more rigorous enforcement of existing laws.

78.     Apple co-founder Steve Wozniak has also criticized Apple's repair restrictions. In July 2021, Mr. Wozniak emphasized how "[w]e wouldn't have had an Apple, had [he] not grown up in a very open technology world." He questioned why Apple would now try to stop the self-repair community, stating that he "believe[s] that companies inhibit it because it gives the companies power [and] control over everything." And he concluded his public statement by urging, "It's time to start doing the right things."

79.     Apple's shareholders followed suit, filing a shareholder resolution in September 2021 that asked Apple to reverse its anti-repair practices. In a contemporaneous press release, the shareholders noted that "Apple continues to earn criticism not only for denying consumers and independent repair shops access to repair materials but also designing products in such a way that hinders repair," and emphasized that the company risks significant reputational harm "if it does not cease its anti-repair practices."

80.     In response to the increasing attention being paid to its repair restrictions, Apple announced in November 2021 that it would soon make parts and repair manuals available to the general public. While Apple's apparent concession calmed the public outcry, Apple has yet to make good on its promise. And as demonstrated by the disingenuous manner in which Apple implemented its Independent Repair Program (the apparent concession it announced in 2019 to calm public outcry), there is little reason to believe that Apple will fully and voluntarily surrender the inflated repair prices, increased product sales, and other unfair competitive advantages secured by the company's repair restrictions.

## CLASS ACTION ALLEGATIONS

81.     This action is brought and may properly be maintained as a class action pursuant to Cal. Code Civ. Proc. § 382.

82.     Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Class initially defined as follows:

**All persons and entities residing in the United States who, in the last four years from the date of the filing of this complaint: (1) bought an Apple Product, or (2) paid Apple or an Apple Authorized Service Provider for an Apple Product repair that was not covered by Apple's Limited Warranty, AppleCare, or AppleCare+.**

83.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

84.     Plaintiffs reserve the right to re-define the Class definition prior to class certification and after having the opportunity to conduct discovery.

**A.      The Parties Are Numerous and Ascertainable**

85.     The proposed Class is so numerous that it is impracticable to bring them all before the Court.  Though the exact number and identities of the Class members are unknown at this time, they likely number thousands of people, because Apple has sold and warranted millions of Apple Products and has repaired thousands of Apple Products.  The number and identities of the Class members may be ascertained from Defendant's records and files and may easily be notified about the pendency of this action through individually mailed notice and/or notice by publication.

**B.      There Is a Well-Defined Community of Interest**

86.     In order to determine if there is a well-defined community of interest such that the question is one of a common or general interest, a court should consider: (1) whether common questions of law and facts predominate; (2) whether the class representative's claims or defenses are typical of the class; and (3) whether the class representative can adequately represent the class.

**1.      Common Questions of Law and Facts Predominate**

(a)      Whether Apple's Limited Warranty contains provisions that violate the Magnuson-Moss Warranty Act's anti-tying provision, 15 U.S.C. §§ 2301, *et seq*.;

(b)      Whether Apple implemented repair restrictions that are unfair and unlawful;

(c)      Whether as a result of Apple's violations of the Magnuson-Moss Warranty Act's anti-tying provision, (15 U.S.C. §§ 2301, *et seq*.), Apple was able to charge higher prices for repairs and/or sell more brand-new Apple replacement products than it

CLASS ACTION COMPLAINT

otherwise would have;

(d)   Whether as a result of Apple's repair restrictions, Apple was able to charge higher prices for repairs and/or sell more brand-new Apple replacement products than it otherwise would have;

(e)   Whether Apple's Limited Warranty contains unconscionable provisions in violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.*;

(f)   Whether as a result of its alleged misconduct, Apple was unjustly enriched; and

(g)   Whether Plaintiffs and the Class are entitled to damages, restitution, and injunctive relief.

### 2.   Plaintiffs' Claims Are Typical of the Class

87.   Plaintiffs' claims are typical of the claims and of the members of the Class because like members of the Class, Plaintiffs bought new Apple Products that were covered by a uniform warranty and were subject to excessive repair fees.

### 3.   The Class Representative Can Adequately Represent the Class

88.   Plaintiffs will fairly and adequately represent and protect the interests of the Class, in that they have no interests that are antagonistic to or that irreconcilably conflict with those of other Class members.  Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation, including substantial experience in the types of claims alleged herein.

### C.   A Class Action Is Superior to All Other Available Methods for the Fair and Efficient Adjudication of Plaintiff's and Class Members' Claims

89.   A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiffs' and Class members' claims. A class action is superior to preserve Class members' claims who would otherwise forego litigation given the burden and expense of individual prosecution of their claims, in comparison to the amount of damages suffered by each individual Class member. Individualized litigation would burden the courts, would increase the delay and expense to all parties and the Court, and would produce the potential for inconsistent or contradictory judgments and would establish incompatible standards of conduct for Defendant.

CLASS ACTION COMPLAINT

The individual prosecution of separate actions would create a risk of adjudications which may be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.  Furthermore, final injunctive relief is appropriate against Defendant with respect to members of a Class as a whole, as opposed to individual injunctions.  Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving thousands of Class members and allow supervision by a single court.

## FIRST CAUSE OF ACTION

### UNLAWFUL AND UNFAIR BUSINESS PRACTICES,

### Cal. Bus. & Prof. Code §§17200, *et seq.*

90.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

91.    Apple has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business practices.

92.    Apple's practice of deliberately frustrating its customers' efforts to repair their own devices, including through the techniques described herein, constitutes an unlawful and unfair business practice.

93.    Apple's practice is unlawful in that it violates the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, Section 5 of the Federal Trade Commission Act ("FTC Act"), and the California Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq.* ("CLRA") as alleged herein.

94.    Apple's practice is unfair for at least the following reasons:

a.   The gravity of harm to Plaintiffs and the proposed Class from Apple's acts and practices far outweigh any legitimate utility of that conduct;

b.   Apple's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiffs and the proposed Class; and

20

CLASS ACTION COMPLAINT

      c.   Apple's conduct undermines or violates the stated public policies underlying the Magnuson-Moss Warranty Act, the FTC Act, and the CLRA.

95.    As a direct and proximate result of Apple's business practices, Plaintiffs have suffered injury in fact and have lost money or property because they have paid increased prices for repairs and/or purchased new, Apple replacement products that they otherwise would not have purchased.

96.    Plaintiffs and the proposed Class are entitled to restitution, injunctive relief (including an order that Apple cease its repair restrictions), and reasonable attorneys' fees and costs.

97.    Injunctive relief is needed because Plaintiffs and many Class members plan to continue using their Apple Products or buy new Apple Products in the future and so will continue to suffer the harm alleged in this complaint—including inflated prices, limited access to timely repairs, and unnecessary environmental damage—unless and until Apple's unfair practices are stopped. Restitution for past harms is an incomplete remedy that would only partially address Plaintiffs' and Class members' grievances.

## SECOND CAUSE OF ACTION

## MAGNUSON-MOSS WARRANTY ACT,

## 15 U.S.C. §§ 2301, *et seq.*

98.    Plaintiffs re-allege the paragraphs above as if fully set forth herein.

99.    By conditioning warranty coverage under its "One (1) Year Limited Warranty" on customers exclusively using Apple or Apple Authorized Service Providers—even for repairs that are not free and not covered by Apple's Limited Warranty—Apple has violated the Magnuson-Moss Warranty Act's ban on illegal tying arrangements.

100.    Specifically, 15 U.S.C. § 2302(c) states: "No warrantor of a consumer product may condition his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service (other than article or service provided without charge under the terms of the warranty) which is identified by brand, trade, or corporate name."

101.    The Plaintiffs and each member of the Class are "consumers" as defined in 15

1 | U.S.C. §2301(3).

2 | 102.    Apple is a "supplier" and "warrantor" as defined in 15 U.S.C. §2301(4) and (5).

3 | 103.    Apple's Products are "consumer products" as defined in 15 U.S.C. § 2301(1).

4 | 104.    Apple has not obtained a waiver from the FTC as provided in 15 U.S.C. § 2302(c).

5 | 105.    15 U.S.C. §2310 provides a cause of action for any consumer who is damaged by a

6 | warrantor's violation of 15 U.S.C. §2302(c).

7 | 106.    As a result of Apple's violation of 15 U.S.C. §2302(c), Apple has damaged

8 | Plaintiffs and Class members as alleged herein, including by causing them to pay inflated prices for

9 | product repairs; causing them to purchase brand-new Apple products that they otherwise would not

10 | have purchased; causing them to purchase AppleCare+ extended warranties that they otherwise

11 | would have purchased; and causing them to forego repairs.

12 | ## THIRD CAUSE OF ACTION

13 | ### VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,

14 | ### Cal. Civ. Code §§1750, *et seq.*

15 | 107.    Plaintiffs Granato, Landrum, and Zarad re-allege the paragraphs above as if fully set

16 | forth herein.

17 | 108.    Apple is a "person" within the meaning of Civil Code §1761(c) and 1770 and has

18 | provided goods within the meaning of Civil Code §1761(b) and 1770.

19 | 109.    Plaintiffs and members of the Class are "consumers" within the meaning of Civil

20 | Code §1761(d) and 1770 and have engaged in a "transaction" within the meaning of Civil Code

21 | §1761(e) and 1770.

22 | 110.    Apple's acts and practices, which were intended to result in, and which did result in,

23 | increased repair costs and the sale of new, Apple replacement products, violate Section 1770 of the

24 | Consumers Legal Remedies Act because Apple inserted unconscionable provisions in the Apple

25 | Limited Warranty.

26 | 111.    Apple's acts and practices are both procedurally and substantively unconscionable.

27 | 112.    Apple's acts and practices are procedurally unconscionable because Apple's

28 | Limited Warranty is a standardized contract of adhesion drafted and imposed by Apple, the party

with superior bargaining strength, on customers on a take-it-or-leave-it basis. Plaintiffs could not have obtained Apple products from other manufacturers; moreover, other tablet and smartphone manufacturers similarly impose repair restrictions.

113.   Apple's actions and practices are substantively unconscionable because they are harsh and shock the conscience; reasonable consumers would not expect that Apple would insert unlawful provisions in the Apple Limited Warranty and void their warranty if they obtained repairs from independent repair shops. Further, reasonable consumers would not expect to be deprived of the freedom of choosing repair shops that are able to provide local, timely and less expensive repairs.  Smartphones and tablets, such as the iPhone and iPad, are necessities; among other things, parents use them to perform work and to conduct business, and children use them to do their schoolwork from home.

114.   In accordance with the provisions of Cal. Civ. Code § 1782(a), Plaintiffs Granato, Landrum, and Zarad, on behalf of themselves and the proposed Class, notified Apple in writing of the CLRA violation alleged herein.

115.   Pursuant to California Civil Code § 1780, Plaintiffs seek all available injunctive relief, including an order enjoining Apple from the unlawful practices described above.  If Apple does not exercise its opportunity to provide corrective action pursuant to Section 1782(b) within the time provided, Plaintiffs will amend this complaint to seek damages and all other available relief.

## FOURTH CAUSE OF ACTION

### UNJUST ENRICHMENT

116.   Plaintiffs Granato, Landrum, and Zarad re-allege the paragraphs above as if fully set forth herein.

117.   As alleged above, Apple violated the anti-tying provisions of the Magnuson-Moss Warranty Act, the FTC Act, and the CLRA by imposing unlawful repair restrictions.

118.   As a result of Apple's conduct, Apple was able to charge increased repair costs and sell more brand-new Apple replacement products than it otherwise would have, thereby obtaining monies which rightfully belong to Plaintiffs and the proposed Class to the detriment of Plaintiffs

1  and the proposed Class.

2       119.    Apple appreciated, accepted, and retained the non-gratuitous benefits conferred by

3  Plaintiffs and the proposed Class.

4       120.    It would be inequitable and unjust for Apple to retain these wrongfully obtained

5  profits.

6       121.    Apple's retention of these wrongfully obtained profits violate the fundamental

7  principles of justice, equity, and good conscience.

8       122.    Plaintiffs and the proposed Class are entitled to restitution of the profits Apple

9  unjustly obtained, plus interest.

10

11  **PRAYER FOR RELIEF**

12       WHEREFORE, Plaintiffs request that the Court enter a judgment awarding the following

13  relief:

14       A.    An order certifying the proposed Class, and appointing Plaintiffs'

15  counsel to represent said class;

16       B.    An order awarding Plaintiffs and Class members their actual damages, punitive

17  damages, restitution, non-restitutionary disgorgement, and/or any other form of monetary relief

18  provided by law under the Magnusson-Moss Warranty Act, the Unfair Competition Law, and their

19  claim for unjust enrichment;

20       C.    An order, pursuant to the Consumers Legal Remedies Act, enjoining Apple from

21  continuing to engage in the alleged illegal practices as the Court deems proper;

22       D.    An order prohibiting Apple from violating the anti-tying provision of the

23  Magnuson-Moss Warranty Act and from employing the repair restrictions alleged herein;

24       E.    An order awarding Plaintiffs and the Class members pre-judgment and post-

25  judgment interest as allowed under the law;

26       F.    An order awarding Plaintiffs and the Class members reasonable attorneys' fees and

27  costs of suit, including expert witness fees; and

28

1      G.      An order awarding such other and further relief as this Court may deem just and

2  proper.

3

Dated: March 11, 2022                **GIBBS LAW GROUP LLP**

4

5                          By: _Rosemary Rivas_

6                          Rosemary M. Rivas
Geoffrey A. Munroe

7                          David K. Stein
Rosanne L. Mah

8                          Kyla Gibboney
505 14th Street, Suite 110

9                          Oakland, California 94612
Telephone: (510) 350-9700

10                       Facsimile: (510) 350-9701

11                        Gayle M. Blatt
Email: gmb@cglaw.com

12                       **CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP**

13                       110 Laurel Street
San Diego, CA  92101

14                       Telephone: (619) 238-1811
Facsimile: (619) 544-9232

15

16                       Melissa R. Emert (*pro hac vice forthcoming*)
Email: memert@kgglaw.com

17                       **KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**

18                       747 Chestnut Ridge Road
Chestnut Ridge, New York 10977

19                       Telephone: (845) 356-2570
Facsimile: (845) 356-4335

20                       *Attorneys for Plaintiffs and the Proposed
Class Members*

21

22

23

24

25

26

27

28